JUDGE OETKEN

26 CV 04861

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAHOO AD TECH LLC and YAHOO IP
HOLDINGS LLC,

      Plaintiffs,

      v.

AD.COM INTERACTIVE MEDIA, INC. d/b/a
ADMEDIA, and DANNY BIBI, an individual,

      Defendants.

Civil Action No.:

## COMPLAINT

Plaintiffs Yahoo Ad Tech LLC and Yahoo IP Holdings LLC (collectively, "Yahoo" or "Plaintiffs"), by and through their undersigned counsel, allege as follows against Defendants Ad.com Interactive Media, Inc. d/b/a AdMedia ("AdMedia") and Danny Bibi ("Mr. Bibi") (collectively, "Defendants"), based on knowledge or information and belief formed after a reasonable inquiry:

## SUBSTANCE OF THE ACTION

1.     This action arises from a brazen scheme of forgery and lies by Defendants AdMedia and its Chief Executive Officer ("CEO") Mr. Bibi to fraudulently procure a trademark registration owned by Yahoo IP Holdings LLC at the United States Patent and Trademark Office ("USPTO"). As part of this scheme, Mr. Bibi and AdMedia fabricated a contract and forged the signature of a Yahoo officer to steal Yahoo's trademark rights.

2.     ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ A true and correct copy of the ██████

██████████ is attached as **Exhibit A**.

3.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

4.    ████████████████████████████ Mr. Bibi and AdMedia orchestrated a scheme to fraudulently acquire Yahoo's existing U.S. Trademark Registration No. 2914052 for the design mark ADVERTISING.COM (the "'052 Registration"). Unbeknownst to Yahoo, AdMedia created a fake "Trademark Assignment Agreement" between AdMedia and Yahoo IP Holdings LLC, bearing a forged signature of a Yahoo executive (the "Fraudulent Assignment"). On December 13, 2024, AdMedia filed the purported Fraudulent Assignment signed by Mr. Bibi at the USPTO to transfer Yahoo's rights in the '052 Registration to AdMedia.

5.    The Fraudulent Assignment bears what appears to be the signature of Yahoo officer Matthew Garber ████████████████████████████. In fact, Mr. Garber did not sign the Fraudulent Assignment. No one at Yahoo ever saw the Fraudulent Assignment until it was discovered recently, and no one at Yahoo ever authorized any assignment of trademark rights to AdMedia. The Fraudulent Assignment was also signed by Mr. Bibi on behalf of AdMedia as the "Assignee." A true and correct copy of the Fraudulent Assignment is attached as **Exhibit B**.

6. As a result of the Fraudulent Assignment, USPTO records now reflect AdMedia as the owner of the '052 Registration. A true and correct copy of the USPTO status page for the '052 Registration is attached as **Exhibit C**.

7. Having fraudulently obtained the '052 Registration, AdMedia then leveraged the stolen registration in proceedings before the USPTO to attempt to procure additional trademark registrations for ADVERTISING.COM, ADVERTISING.NET, ADVERT.COM, and ADVERTISE.COM—filing *four original applications* and subsequently dividing two of them into parent and child applications, resulting in *six total applications* in which it cited the fraudulently acquired '052 Registration to argue acquired distinctiveness and to expedite examination.

8. In short, Mr. Bibi and AdMedia took by fraud ███████████████████ ████████████████, and they then leveraged that fraud to further deceive the USPTO to obtain additional trademark rights. Mr. Bibi's and AdMedia's conduct constitutes a willful and ███████████████████████, fraud upon the USPTO, and violations of 15 U.S.C. §§ 1119 and 1120 of the Lanham Act. To remedy the harm caused by Defendants' wrongful conduct, Yahoo seeks actual damages, punitive damages, injunctive relief, attorneys' fees, rectification of the trademark register, and all other appropriate relief.

## THE PARTIES

9. Yahoo Ad Tech LLC is a limited liability company organized under the laws of Delaware, with its headquarters at 770 Broadway, 9th Floor, New York, NY 10003-9562. Yahoo Ad Tech LLC is the ███████████████████

10. Yahoo IP Holdings LLC is a limited liability company organized under the laws of Delaware, with its headquarters at 770 Broadway, 9th Floor, New York, NY 10003-9562.

Yahoo IP Holdings LLC is the rightful owner of the '052 Registration, which it never authorized for assignment to AdMedia.

11.    On information and belief, AdMedia is a corporation organized under the laws of California, with its principal address (according to its most recent filing with the California Secretary of State) at 303 North Glenoaks Blvd., Suite 200, Burbank, California 91502. AdMedia is the ████████████████████████ and the party that fraudulently assigned the '052 Registration to itself.

12.    On information and belief, Danny Bibi is an individual residing in the State of California. On information and belief, Mr. Bibi is the CEO and owner of AdMedia. Mr. Bibi personally ████████████████████ as AdMedia's CEO, personally signed the Fraudulent Assignment as AdMedia's CEO, and personally signed sworn declarations submitted to the USPTO in support of AdMedia's Petitions to Make Special for the ADVERTISING.COM and ADVERTISING.NET trademark applications. Mr. Bibi was the ████████████ ████████████████████ and is the driving force behind all of the fraudulent conduct alleged in this Complaint.



## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction because Yahoo asserts claims under the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1119 and 1120, which trigger federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state law claim (Count I) pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this District pursuant to ████████████████ ████████████████████████████████████ ████████████████████████████████████

████████████████████ New York County is within the Southern District of New York. Venue is also proper under 28 U.S.C. § 1391(b). *See also* NY Gen. Oblig. Law § 5-1402(1) ("any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking" with a New York choice of law provision, that involves "consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars" and in which "such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state".)

15.     Personal jurisdiction exists over AdMedia because it has ██████████



16.     Personal jurisdiction exists over Mr. Bibi individually. On information and belief, Mr. Bibi is the CEO and owner of AdMedia. ████████████████████ ████████████████████ and he personally signed the Fraudulent Assignment purporting to transfer Yahoo's '052 Registration to AdMedia. Mr. Bibi also personally signed sworn declarations submitted to the USPTO in support of AdMedia's Petitions to Make Special for the ADVERTISING.COM and ADVERTISING.NET applications. On information and belief, Mr. Bibi directed and controlled AdMedia's fraudulent scheme from its inception, including the effort to ████████████████████, the creation and signing of the fabricated Fraudulent Assignment bearing a forged signature of a Yahoo officer,

the recording of the Fraudulent Assignment with the USPTO through AdMedia's counsel, and the filing through counsel of trademark applications and supporting documents that relied on the fraudulently acquired '052 Registration. Mr. Bibi played an active and central role in every aspect of the transaction and the subsequent fraud. Moreover, as the controlling principal who

████████████████████████████████████████████████████████████████

██████████████████████████████████████ .

**FACTUAL BACKGROUND:** ████████████████████████

17.   ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

18.   ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

19.   ███████████████████████████████ .

20.   ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

6





## DEFENDANT'S FRAUDULENT CONDUCT

### A. The Fraudulent Assignment

25.    Yahoo IP Holdings LLC is the rightful owner of the '052 Registration, which was originally filed on December 20, 1999, and registered on December 28, 2004. It covers "computer services, namely, providing an interactive on-line computer database in the field of cooperative advertising, marketing, and content serving; dissemination of advertising for others via a global computer network" in International Class 035.

26.    Shortly after ███████████████████████████ Mr. Bibi and AdMedia fabricated the Fraudulent Assignment (*see* **Exhibit B**), which has two signatures dated November 4, 2024:  Mr. Bibi as CEO of "Ad.com Interactive Media, Inc." as Assignee and Matthew Garber as "Vice President" of "Yahoo IP Holdings LLC" as Assignor. Mr. Garber's signature on the Fraudulent Assignment appears to be a copy of his electronic signature ██████ ████████████████████ but without the DocuSign verification information that would normally accompany his DocuSign signature.  A comparison of Mr. Garber's genuine signature ██████████████████████████ the forged signature on the Fraudulent Assignment is shown below, which demonstrates that the signature was copied ███████████ ██████



| | Fraudulent Assignment Signature |
|---|---|
| Signed by: *Matthew Garber* ~~73AEED8ECB73498~~ **Yahoo Ad Tech LLC** | *Matthew Garber* |

27.    The Fraudulent Assignment, which spans less than three pages, purports to assign "all of Assignor's right, title, and interest in and to the trademark 'advertising.com' logo, U.S. Trademark Registration No. 2914052 and Serial No. 75876105, together with all associated goodwill." It also claims that "this agreement was made for good and valuable consideration," but does not explain what that consideration supposedly consisted of.

28.    AdMedia recorded the Fraudulent Assignment with the USPTO on December 13, 2024, under Assignment ID TMI693840, Trademark Reel 008680, Frame 0701.

29.    The Fraudulent Assignment should be deemed void. Neither Yahoo IP Holdings LLC nor any other Yahoo entity authorized the assignment of the '052 Registration or any other trademark rights to AdMedia. Mr. Garber never signed the Fraudulent Assignment and never authorized anyone to sign it for him. Yahoo never saw the Fraudulent Assignment (or a draft of it) before it was filed with the USPTO, until it was discovered recently. As alleged above, Mr. Bibi, on behalf of AdMedia, sought ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████

30. Yahoo was not aware of the Fraudulent Assignment until recently, when it discovered, by chance, that USPTO records had been altered to reflect AdMedia as the purported owner of the '052 Registration. The Fraudulent Assignment was executed and recorded without Yahoo's knowledge or consent, and neither Mr. Bibi nor AdMedia took any steps to notify Yahoo of their actions.

31. As a result of the Fraudulent Assignment, USPTO records now incorrectly show "Ad.Com Interactive Media, Inc." as the owner of the '052 Registration. *See* **Exhibit C.**

32. Following the Fraudulent Assignment, on December 30, 2024, AdMedia filed a Section 8 and Section 9 combined declaration of continued use and renewal for the '052 Registration, falsely representing itself as the lawful owner of the '052 Registration.

33. Unbeknownst to Yahoo, AdMedia also changed the attorney of record for the '052 Registration from Yahoo's in-house counsel to its own counsel, Kameron W. Kramer of Law 4 Small Business of Texas, PLLC, the same attorney who represents AdMedia in all the trademark applications described herein. This change of representation further consolidated AdMedia's unauthorized control over Yahoo's '052 Registration.

**B. AdMedia's Use of the Fraudulent Registration to Procure Additional Trademark Rights**

34. Armed with the fraudulently acquired '052 Registration, Mr. Bibi and AdMedia engaged in a systematic campaign to leverage the stolen '052 Registration to procure additional trademark rights before the USPTO, ████████████████ ████████ This campaign encompassed four trademark applications—two of which were subsequently divided into parent and child applications—resulting in six total applications across the following marks:

   i. **The ADVERTISING.COM Application (Serial No. 98901411)**

35.     On December 13, 2024, the same day the Fraudulent Assignment was recorded, AdMedia filed a trademark application for ADVERTISING.COM in standard characters (U.S. Application Serial No. 98901411) for advertising and marketing services in Class 35, claiming first use as of January 17, 2000, and claiming ownership of the fraudulently acquired '052 Registration.

36.     In the application itself, AdMedia stated: "Applicant has filed an Assignment in US Registration Number: 2914052 in order to transfer ownership of that trademark to Applicant. The Assignment was filed on December 13, 2024."

37.     On March 4, 2025, AdMedia, through a declaration signed by Mr. Bibi, filed a Petition to Make Special seeking expedited examination of the Serial No. 98901411 application, based in part on its purported ownership of the fraudulently acquired '052 Registration. The petition was granted on April 29, 2025.

38.     On June 5, 2025, AdMedia filed a response to an Office Action, in which AdMedia asserted a claim of acquired distinctiveness under Section 2(f) of the Trademark Act "based on Active Prior Registration(s)," specifically citing the fraudulently acquired '052 Registration.

39.     On November 20, 2025, AdMedia filed a Request to Divide its ADVERTISING.COM application (Serial No. 98901411), separating the goods and services listed for the application into a parent application (the pending application Serial No. 98901411) and a child application bearing Serial No. 98977637 (discussed in the next subsection below).

40.     On January 8, 2026, AdMedia again relied on the fraudulently acquired registration in another filing in response to an Office Action, citing the '052 Registration to support its Section 2(f) claim.

41.     On March 4, 2026, the USPTO issued a Final Office Action denying the parent application (Serial No. 98901411) based on genericness and mere descriptiveness.

### ii. The ADVERTISING.COM Child Application (Serial No. 98977637)

42.     As mentioned above, on November 20, 2025, AdMedia filed a Request to Divide its ADVERTISING.COM application (Serial No. 98901411), which the USPTO granted on February 19, 2026, resulting in a child application bearing Serial No. 98977637.

43.     This child application proceeded through examination benefiting from the misleading prosecution history of the parent application—a history built in substantial part on representations to the USPTO regarding AdMedia's purported ownership of the fraudulently acquired '052 Registration.

44.     Based on this misleading prosecution history, the USPTO determined that this child application appeared to be entitled to registration, and on May 5, 2026, the USPTO published the application for opposition, meaning that unless any third party opposes the application, it will mature to registration.

### iii. The ADVERTISING.NET Application (Serial No. 98933512)

45.     On January 2, 2025, AdMedia filed a trademark application for ADVERTISING.NET in standard characters (U.S. Application Serial No. 98933512) for advertising and marketing services in Class 35, claiming first use as of May 31, 2008, and claiming ownership of the fraudulently acquired '052 Registration.

46.     On March 4, 2025, AdMedia, through a declaration signed by Mr. Bibi, filed a Petition to Make Special for this application as well, based in part on the fraudulently acquired '052 Registration. The petition was granted on April 29, 2025.

47.    In its initial June 5, 2025 response to an Office Action for the ADVERTISING.NET application, AdMedia asserted a claim of acquired distinctiveness based on five years' use, but did not specifically cite the fraudulently acquired registration.

48.    On November 20, 2025 AdMedia filed a Request to Divide its ADVERTISING.NET application (Serial No. 98933512), separating the goods and services listed for the application into a parent application (the pending application Serial No. 98933512) and a child application bearing Serial No. 98977628 (discussed in the next subsection below).

49.    In its filing on January 8, 2026, AdMedia relied on the fraudulently acquired '052 Registration to argue acquired distinctiveness in its further response to an Office Action.

50.    On March 4, 2026, the USPTO issued a Final Office Action denying the parent application (Serial No. 98933512) based on genericness and mere descriptiveness.

### iv.  The ADVERTISING.NET Child Application (Serial No. 98977628)

51.    As mentioned above, on November 20, 2025, AdMedia filed a Request to Divide its ADVERTISING.NET application (Serial No. 98933512), which the USPTO granted on February 19, 2026, resulting in a child application bearing Serial No. 98977628.

52.    This child application proceeded through examination benefiting from the misleading prosecution history of the parent application—a history built in substantial part on representations to the USPTO regarding AdMedia's purported ownership of the fraudulently acquired '052 Registration.

53.    Based on this misleading prosecution history, the USPTO determined that this child application appeared to be entitled to registration, and on May 5, 2026, the USPTO published the application for opposition, meaning that unless any third party opposes the application, it will mature to registration.

### v.  The ADVERT.COM Application (Serial No. 98933542)

54.    On January 2, 2025, the same day it filed its ADVERTISING.NET application, AdMedia also filed a trademark application for ADVERT.COM in standard characters (Serial No. 98933542) for advertising and marketing services in Class 35, claiming first use as of June 30, 2004.

55.    In its application filing, AdMedia specifically claimed ownership of the fraudulently acquired '052 Registration in support of the application.

56.    In response to a June 23, 2025 Office Action refusing registration on the ground that the mark was merely descriptive, AdMedia asserted a claim of acquired distinctiveness under Section 2(f) of the Trademark Act based on alleged five years' use. After a second Office Action on October 22, 2025, finding the five years' use claim insufficient, AdMedia submitted additional evidence of acquired distinctiveness in support of its Section 2(f) claim.

57.    Based on this misleading prosecution history, the USPTO determined that this application appeared to be entitled to registration, and on May 29, 2026, the USPTO approved the application to be published for opposition, meaning that unless any third party opposes the application, it will mature to registration.

### vi.  ADVERTISE.COM Application (Serial No. 99169774)

58.    On May 5, 2025, AdMedia filed a trademark application for ADVERTISE.COM in standard characters (U.S. Application Serial No. 99169774) for advertising and marketing services in Class 35, claiming first use as of January 17, 2000 (the same first-use date as Yahoo's '052 Registration).

59.    In its application filing, AdMedia specifically claimed ownership of the fraudulently acquired '052 Registration in support of the application.

14

60.    On September 22, 2025, the USPTO issued a Non-Final Office Action refusing registration on the ground that the mark was merely descriptive. AdMedia responded on December 29, 2025, amending the application to the Supplemental Register. On February 5, 2026, the USPTO issued a second Non-Final Office Action raising a new genericness refusal in addition to maintaining the descriptiveness refusal, and the application remains pending.

### C. The Pattern of Fraud

61.    Mr. Bibi's and AdMedia's conduct demonstrates a deliberate and calculated scheme to defraud both Yahoo and the USPTO. The timeline is telling:



- November 4, 2024: The Fraudulent Assignment is supposedly executed, bearing Mr. Bibi's signature as CEO of AdMedia and a forged signature purporting to be that of Mr. Garber, to assign the '052 Registration to AdMedia.

- December 13, 2024: AdMedia records the Fraudulent Assignment with the USPTO, resulting in AdMedia becoming the listed owner of the '052 Registration.

- December 13, 2024: AdMedia files its trademark application for ADVERTISING.COM, citing the fraudulently acquired '052 Registration.

- December 30, 2024: AdMedia files a Section 8 and Section 9 combined declaration of continued use and renewal for the '052 Registration, falsely representing itself as the lawful owner of the '052 Registration.

- January 2, 2025: AdMedia files trademark applications for ADVERTISING.NET and ADVERT.COM, both citing the fraudulently acquired '052 Registration.

- March 4, 2025: AdMedia, through declarations signed by Mr. Bibi, files Petitions to Make Special for the ADVERTISING.COM and ADVERTISING.NET applications, relying on the fraudulently acquired '052 Registration.

- May 5, 2025: AdMedia files a trademark application for ADVERTISE.COM, claiming first use as of January 17, 2000 relying on the fraudulently acquired '052 Registration.

- June 5, 2025: AdMedia cites the fraudulently acquired '052 Registration to argue acquired distinctiveness in its ADVERTISING.COM application and asserts five years' use in its ADVERTISING.NET application.

- January 8, 2026: AdMedia cites the fraudulently acquired '052 Registration to argue acquired distinctiveness in both its ADVERTISING.COM application and its ADVERTISING.NET application.

62.     As a result of AdMedia's fraudulent and misleading representations to the USPTO, AdMedia has not only become the purported owner of the '052 Registration, but also is on the brink of obtaining registrations for ADVERTISING.COM, ADVERTISING.NET, ADVERT.COM, and possibly ADVERTISE.COM.

63.     Mr. Bibi's and AdMedia's actions evince a high degree of moral turpitude and demonstrate wanton dishonesty. Mr. Bibi, as AdMedia's CEO ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, he orchestrated a scheme to fraudulently take what they could not lawfully obtain, all while ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. Mr. Bibi and AdMedia then compounded their fraud by repeatedly citing the stolen registration in six trademark applications before the USPTO to mislead the USPTO and gain an unfair advantage in the trademark registration process.

D. **AdMedia's and Mr. Bibi's History of Fraudulent and Deceptive Conduct**

64.    The fraud perpetrated against Yahoo and the USPTO described herein is consistent with AdMedia's and Mr. Bibi's established pattern of fraudulent and deceptive conduct in domain name disputes and other legal proceedings. This pattern of fraudulent and deceptive conduct was not known to Yahoo ████████████████████████████████ ████████████.

65.    In 2020, a World Intellectual Property Organization ("WIPO") arbitration panel found that AdMedia, acting through its affiliate CheapStuff, Inc. and represented by AdMedia's in-house counsel Robert Bass, had submitted a Uniform Domain-Name Dispute-Resolution Policy (UDRP) complaint containing false statements and fabricated evidence in an attempt to hijack the domain name from its lawful owner. *See Cheapstuff, Inc. v. Admin, Domain / NG9 Communications Pvt. Ltd*, Case No. D2020-1354 (WIPO July 14, 2020).

66.    In that proceeding, the WIPO panel declared that AdMedia's complaint "was brought in bad faith and constitutes an abuse of the administrative proceeding," and found that the complaint was "brought with disregard for the truth, and contains false statements and evidence designed to mislead the Panel." The panel specifically noted that AdMedia's representative had submitted a purported invoice from the domain registrar that appeared to show that the domain name had been renewed on April 22, 2020. In fact, the domain name's renewal deadline had passed months earlier, the redemption grace period had expired on March 8, 2020, and the respondent had already acquired the domain name at auction on the same date— meaning that no legitimate renewal was possible at the time the invoice was dated. The panel found that AdMedia had submitted this evidence as part of a scheme to create a false narrative of

17

continued ownership and to mislead the panel into ordering transfer of a domain that AdMedia had lost.

67.    The WIPO panel further found that AdMedia had submitted a fabricated email purporting to show that the respondent allegedly demanded $150,000 for the domain name. The respondent denied sending the email and asserted that AdMedia had fabricated it—specifically, that AdMedia had written the purported "reply" itself to manufacture evidence that the respondent was attempting to extort AdMedia. After careful review of the emails, the panel found AdMedia's account not credible and concluded that no such offer was ever made by the respondent. The panel noted that the respondent "may have reason to report Complainant's representative who certified the Complaint to the appropriate (e.g., bar association or otherwise) authorities."

68.    In 2016, a National Arbitration Forum panel found that Mr. Bibi, as CEO of AdMedia, had registered and used a domain name in bad faith by typosquatting on Oracle International Corporation's famous ORACLE trademark. *See Oracle International Corporation v. Danny B / Admedia*, Case No. FA1605001674542 (FORUM June 27, 2016). The panel found that the domain had been used for distributing malware, redirecting to pornographic websites, and advertising competing products. The panel ordered the domain transferred to Oracle. The panel further found that Mr. Bibi had registered over four hundred other domains which appeared to typosquat on other valid domain names and trademarks.

69.    In November 2025, Shopnomix LLC and Pronomix.ai LLC (collectively, "Nomix Group") filed a federal lawsuit against AdMedia in the Central District of California for trademark infringement, unfair competition, and cybersquatting. *See Shopnomix LLC et al. v. Ad.com Interactive Media, Inc.*, Case No. 2:25-cv-10802 (C.D. Cal. filed Nov. 11, 2025). As

alleged in the Nomix Group complaint, AdMedia entered into contractual relationships with Shopnomix LLC in 2022 and 2023, learned of Nomix Group's SHOPNOMIX and PRONOMIX trademarks through those relationships, and then began using the identical trademarks to market and sell competing services. As further alleged in that complaint, AdMedia also filed trademark applications with the USPTO for SHOPNOMIX and PRONOMIX, with one application falsely claiming use of the PRONOMIX mark since 2005 when, upon information and belief, AdMedia had not used the mark before 2025. The Nomix Group complaint further alleges that AdMedia registered the domain name Pronomix.com to divert consumers from Nomix Group's services. The allegations in the Nomix Group case reveal a pattern strikingly similar to the conduct at issue here: AdMedia enters into a business relationship, learns of its counterparty's intellectual property, and then attempts to misappropriate that intellectual property through false filings with the USPTO.

70.    In addition, Mr. Bibi and AdMedia were defendants in adversary proceedings brought by the Chapter 7 Trustee in the bankruptcy case of Mainstream Advertising, Inc. (*In re Mainstream Advertising*, C.D. Cal. Case No. 1:17-bk-12980-MT; *Goldman v. Bibi et al.*, Adv. No. 1:20-ap-01027, filed Mar. 5, 2020). In that proceeding, the Trustee alleged that Mr. Bibi, while serving as a de facto officer of Mainstream, directed and caused Mainstream to transfer over $571,000 in monetary assets and proprietary customer information to Monetize.com, Inc. and Ad.com Interactive Media, Inc., entities Mr. Bibi owned and controlled, with actual intent to hinder, delay, or defraud Mainstream's creditors. The Trustee further alleged that Mr. Bibi provided testimony under penalty of perjury that he knew or should have known was materially false, misleading, or incomplete regarding his role at Mainstream, and that he actively frustrated the Trustee's administration of the estate by failing to appear for examinations, failing to turn

19

over documents, and filing pleadings containing materially false information. The Trustee sought avoidance of the fraudulent transfers, breach of fiduciary duty damages, and punitive damages, alleging that the defendants' conduct was "willful, wanton, malicious, oppressive, outrageous and fraudulent." The adversary proceeding was resolved by court-approved settlement in 2024 and dismissed with prejudice on January 22, 2025.

71.    In 2021, Engage BDR, LLC filed a lawsuit against AdMedia, Monetize.com, Inc., and Danny Bibi in Los Angeles Superior Court alleging, among other claims, unfair and fraudulent business practices and abuse of process. *See Engage BDR, LLC v. Ad.com Interactive Media, Inc. et al.*, Case No. 21STCV23369 (Cal. Super. Ct., L.A. Cnty., filed June 22, 2021). The Engage BDR complaint alleges that Mr. Bibi, as CEO of both AdMedia and Monetize.com, orchestrated the fabrication of a "Master Services Agreement" and an addendum by transferring the signature block of Engage's principal from a legitimate document onto the fabricated agreements, the same technique of copying signatures from authentic documents that is alleged here. A Certified Questioned Document Examiner confirmed that the signatures on the fabricated agreements were not genuine and had been "transferred from another document." According to the complaint, Mr. Bibi and AdMedia then used the falsified documents as the basis for a lawsuit against Engage to coerce payment on claims that had already been released in a prior settlement agreement between the parties. The Engage BDR case reveals conduct strikingly parallel to the conduct alleged in this Complaint: Mr. Bibi copies a counterparty's signature from a legitimate agreement onto a fabricated document, and then leverages that fabricated document to obtain benefits to which he has no legitimate claim.

72.    AdMedia's and Mr. Bibi's history of fabricating evidence, submitting false statements to adjudicatory bodies, engaging in cybersquatting and malware distribution, and

improperly transferring assets demonstrates a deeply ingrained pattern of fraud and dishonesty that is directly relevant to the fraudulent conduct alleged in this Complaint.

## COUNT I

### BREACH OF CONTRACT
### (against AdMedia)

73.    Yahoo incorporates by reference the allegations set forth in paragraphs 1 through 72 as though fully set forth herein.



c.

d.

e.

f.

77.    As a direct and proximate result of AdMedia's breach, Yahoo has suffered damages, including but not limited to: the loss of the '052 Registration from Yahoo's intellectual property portfolio; costs incurred to investigate the Fraudulent Assignment and AdMedia's related fraudulent and misleading filings with the USPTO in connection with the '052 Registration and the pending applications discussed herein; costs incurred to prepare and file a

corrective assignment with the USPTO; attorneys' fees and costs incurred in connection with this action; and damage to Yahoo's intellectual property rights and goodwill.

78.    AdMedia's breach of contract involves fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations. AdMedia's conduct was aimed at the public generally through its filings with the USPTO, a federal agency charged with protecting the public interest in the integrity of the trademark register. Accordingly, Yahoo is entitled to recover punitive damages.

## COUNT II

### VIOLATION OF 15 U.S.C. § 1120
### (against AdMedia and Mr. Bibi)

79.    Yahoo incorporates by reference the allegations set forth in paragraphs 1 through 78 as though fully set forth herein.

80.    Section 38 of the Lanham Act, 15 U.S.C. § 1120, provides: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

81.    AdMedia procured the '052 Registration through false and fraudulent means. Specifically, Mr. Bibi signed the Fraudulent Assignment, and AdMedia, recorded it at the USPTO, falsely representing that Yahoo IP Holdings LLC had irrevocably assigned all right, title, and interest in the '052 Registration to AdMedia. This representation was false. The Fraudulent Assignment also bears a forged signature purporting to be that of Mr. Garber on behalf of Yahoo. The forged signature appears to have been copied from Mr. Garber's legitimate DocuSign electronic signature ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, without the DocuSign verification information that would normally accompany his genuine DocuSign signature. It is

23

Yahoo's typical corporate practice for DocuSign signatures to include such verification information, and its absence from the Fraudulent Assignment is further evidence of forgery.

82.    AdMedia also filed a Section 8 and Section 9 combined declaration of continued use and renewal for the '052 Registration, falsely representing itself as the lawful owner of the '052 Registration.

83.    AdMedia further made false representations to the USPTO in connection with its pending trademark applications, including by asserting ownership of the '052 Registration as a basis for claims of acquired distinctiveness and in support of Petitions to Make Special.

84.    Mr. Bibi and AdMedia knew that their representations were false. Mr. Bibi ██████████████████████████████████████████ on behalf of AdMedia, ███████████ ██████████████████████████████████████████████████████ ██████████████████████████████. Mr. Bibi also knew that Mr. Garber did not sign the Fraudulent Assignment—because Mr. Bibi himself created the Fraudulent Assignment bearing a forged copy of Mr. Garber's signature—and that AdMedia provided no consideration to Yahoo in connection with the Fraudulent Assignment.

85.    Mr. Bibi and AdMedia intended to induce the USPTO to act based upon its false representations. AdMedia submitted the Fraudulent Assignment and subsequent declarations to the USPTO for the express purpose of causing the USPTO to: (a) record the transfer of ownership of the '052 Registration to AdMedia; (b) accept AdMedia's Section 8 and Section 9 declarations and thereby renew the '052 Registration in AdMedia's name; (c) grant AdMedia's Petitions to Make Special; (d) accept AdMedia's Section 2(f) claims of acquired distinctiveness; and (e) approve AdMedia's applications for ADVERTISING.COM, ADVERTISING.NET, and ADVERT.COM for registration, pending the public opposition period.

86.    Based on Mr. Bibi's and AdMedia's misrepresentations, the USPTO was reasonably deceived into recording the Fraudulent Assignment and transferring ownership of the '052 Registration to AdMedia, accepting AdMedia's Section 8 and 9 renewal declarations to maintain the '052 Registration, granting AdMedia's Petitions to Make Special for its ADVERTISING.COM and ADVERTISING.NET applications through declarations signed by Mr. Bibi, accepting AdMedia's Section 2(f) claims of acquired distinctiveness, and approving AdMedia's applications for ADVERTISING.COM, ADVERTISING.NET, and ADVERT.COM for registration, pending the public opposition period.

87.    Yahoo has been injured as a direct and proximate result of Mr. Bibi's and AdMedia's false and fraudulent representations. Yahoo's damages include, but are not limited to: the loss of the '052 Registration from Yahoo's intellectual property portfolio; costs incurred to investigate the Fraudulent Assignment and Mr. Bibi's and AdMedia's related fraudulent and misleading filings with the USPTO in connection with the '052 Registration and the pending applications discussed herein; costs incurred to prepare and file a corrective assignment with the USPTO; attorneys' fees and costs incurred in connection with this action; and damage to Yahoo's intellectual property rights and goodwill.

## COUNT III

### RECTIFICATION OF THE REGISTER UNDER 15 U.S.C. § 1119
(against AdMedia)

88.    Yahoo incorporates by reference the allegations set forth in paragraphs 1 through 87 as though fully set forth herein.

89.    Section 37 of the Lanham Act, 15 U.S.C. § 1119, provides that "[i]n any action involving a registered mark, the court may determine the right to registration, order the

25

cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."

90.     This action involves a registered mark, specifically the '052 Registration. The '052 Registration was fraudulently assigned to AdMedia through the Fraudulent Assignment recorded with the USPTO on December 13, 2024, under Assignment ID TM1693840. As a result of the Fraudulent Assignment, the USPTO register incorrectly reflects AdMedia as the owner of the '052 Registration.

91.     Yahoo IP Holdings LLC is the rightful owner of the '052 Registration. Neither Yahoo IP Holdings LLC nor any other Yahoo entity authorized the assignment of the '052 Registration to AdMedia. The Fraudulent Assignment should be deemed void and of no legal effect.

92.     In addition, Mr. Bibi and AdMedia's fraudulent acquisition and use of the '052 Registration has tainted the prosecution of six pending trademark applications before the USPTO: ADVERTISING.COM (Serial Nos. 98901411 and 98977637), ADVERTISING.NET (Serial Nos. 98933512 and 98977628), ADVERT.COM (Serial No. 98933542), and ADVERTISE.COM (Serial No. 99169774). Each of these applications was filed by AdMedia citing the fraudulently acquired '052 Registration, and several relied on that registration to assert claims of acquired distinctiveness and/or to obtain expedited examination through Petitions to Make Special. The prosecution histories of these applications are inextricably intertwined with AdMedia's fraud.

93.     To fully rectify the harm caused by Mr. Bibi and AdMedia's fraud, Yahoo is entitled to an order pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to: (a) cancel/strike the Fraudulent Assignment and restore Yahoo IP Holdings LLC as the owner of the

'052 Registration; and (b) refuse/cancel/strike all pending trademark applications tainted by the Fraudulent Assignment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Yahoo Ad Tech LLC and Yahoo IP Holdings LLC respectfully pray for judgment against Defendants Ad.com Interactive Media, Inc. and Danny Bibi as follows:

A.    On Count I, a judgment that AdMedia has materially breached ██████████ ████████;

B.    On Count II, a judgment that Mr. Bibi and AdMedia have violated 15 U.S.C. § 1120;

C.    On Count III, an order pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to rectify the register by cancelling/striking the Fraudulent Assignment and restoring Yahoo IP Holdings LLC as the rightful owner of the '052 Registration, and ordering Mr. Bibi and AdMedia to cooperate fully with all corrective filings at the USPTO and to bear all costs, fees, and expenses associated with such corrective filings;

D.    On Count III, an order pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to rectify the register by refusing/cancelling/striking the pending trademark applications for ADVERTISING.COM, ADVERTISING.NET, ADVERT.COM, and ADVERTISE.COM (Serial Nos. 98901411, 98933512, 98933542, 99169774, 98977637, and 98977628), and ordering Mr. Bibi and AdMedia to cooperate fully with such actions, including by filing a withdrawal or

abandonment necessary to effectuate the relief requested, and to bear all costs, fees, and expenses associated therewith.

E.  Compensatory damages in an amount to be determined at trial;

F.  Punitive damages in an amount to be determined at trial;

G.  Preliminary and permanent injunctive relief enjoining Mr. Bibi, AdMedia, and its owners, officers, parents, subsidiaries, affiliates, agents, and representatives, from:

   i.  ███████████████████████████████ ██████████ and

   ii. Making any representations to the USPTO or any other body regarding purported ownership of the '052 Registration or any rights therein, or relying on the '052 Registration or any rights purportedly derived therefrom in connection with any current or future trademark application or registration

H.  Attorneys' fees, costs, and expenses incurred in this action ███████████ ████████████████████████████ 15 U.S.C. § 1117

I.  Pre-judgment and post-judgment interest as allowed by law;

J.  A judicial determination and declaration that the signature of Matthew Garber on the Fraudulent Assignment is a forgery; and

K.  Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: June 4, 2026

Respectfully Submitted,

BY:  /s/ Evan S. Nadel
EVAN S. NADEL
KILPATRICK TOWNSEND & STOCKTON LLP
3 Times Square
New York, NY 10036
Telephone: 212-775-8700
Facsimile: 212-775-8800
Email: enadel@ktslaw.com

*Attorney for Plaintiffs*

29