UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YAHOO AD TECH LLC and YAHOO IP HOLDINGS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AD.COM INTERACTIVE MEDIA, INC. d/b/a ADMEDIA, and DANNY BIBI, an individual,<br><br>Defendants. | Civil Action No.: 1:26-cv-04861-JPO |

**MEMORANDUM OF LAW IN OPPOSITION TO AD.COM INTERACTIVE MEDIA, INC. AND DANNY BIBI'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

EVAN S. NADEL
**KILPATRICK TOWNSEND & STOCKTON LLP**
3 Times Square
New York, NY 10036
Telephone: 212-775-8700
Facsimile: 212-775-8800
Email: enadel@ktslaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 2
A. Yahoo Sells the Domain Names but Keeps Its Trademark Rights .......... 2
B. Mr. Bibi Forges an Assignment and AdMedia Steals the Registration .......... 2
C. This Is Not the First Time .......... 3
III. LEGAL STANDARD .......... 4
IV. ARGUMENT .......... 5
A. Count I States A Claim for Breach of Contract .......... 5
1. Yahoo Pleads Every Element .......... 5
2. AdMedia Breached Section 1(f) While It Was in Force .......... 5
3. Materiality Is Not an Element .......... 7
4. The Implied Covenant Cannot Give AdMedia What Yahoo Refused to Sell .......... 8
5. AdMedia Breached Section 3(i)(i) .......... 9
6. Yahoo Pleads Damages .......... 12
7. Abandonment Cannot Be Decided on the Pleadings .......... 14
B. Count II States A Claim Under 15 U.S.C. § 1120 (Fraud on the USPTO) .......... 15
1. Yahoo Pleads Every Element .......... 15
2. AdMedia's Fraudulent Procurement and Use of the Registration Injured Yahoo, and That Injury Does Not Depend on Attorneys' Fees .......... 16
3. Rule 9(b) Is Satisfied .......... 19
4. Defendants Make No Separate Argument as to Mr. Bibi .......... 20
C. Count III States A Claim Under 15 U.S.C. § 1119 (Rectification of the Register) .......... 20
1. Count III Proceeds as to the '052 Registration .......... 20
2. The Court May Reach the Related Applications .......... 20
3. Alternatively, the Court May Order AdMedia to Withdraw Its Applications .......... 23
D. Section D of the Complaint Should Not Be Stricken .......... 24
V. CONCLUSION .......... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
98 N.Y.2d 144 (2002) ........ 9

*34-06 73, LLC v. Seneca Ins. Co.*,
39 N.Y.3d 44 (2022) ........ 5

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
279 F. Supp. 2d 341 (S.D.N.Y. 2003) ........ 23

*Adidas Am., Inc. v. Thom Browne Inc.*,
599 F. Supp. 3d 151 (S.D.N.Y. 2022) ........ 22

*Aero Garage Corp. v. Hirschfeld*,
185 A.D.2d 775 (1st Dep't 1992) ........ 13

*Avnet, Inc. v. Am. Motorists Ins. Co.*,
684 F. Supp. 814 (S.D.N.Y. 1988) ........ 26, 27

*BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*,
97 F.4th 668 (9th Cir. 2024) ........ 21, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Bisk v. Cooper Square Realty, Inc.*,
115 A.D.3d 419 (1st Dep't 2014) ........ 7

*Carroll v. Trump*,
124 F.4th 140 (2d Cir. 2024) ........ 24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 11

*City of Elmira v. Larry Walter, Inc.*,
150 A.D.2d 129 (3d Dep't 1989) ........ 13

*Congel v. Malfitano*,
31 N.Y.3d 272 (2018) ........ 13

*Crosby v. Stew Leonard's Yonkers LLC*,
695 F. Supp. 3d 551 (S.D.N.Y. 2023) ........ 27

*Cross Com. Media, Inc. v. Collective, Inc.*,
841 F.3d 155 (2d Cir. 2016)....................14

*D & L Holdings, LLC v. RCG Goldman Co.*,
287 A.D.2d 65 (1st Dep't 2001)....................9

*D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
168 A.D.3d 505 (1st Dep't 2019)....................13

*Dubai Equine Hosp. v. Equine Imaging, LLC*,
No. 18-CV-6925 (VSB), 2019 WL 3811922 (S.D.N.Y. Aug. 14, 2019)....................24, 25, 27

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399 (1993)....................6

*Evolution Mkts., Inc. v. Alpental Energy Partners, LLC*,
221 F. Supp. 3d 361 (S.D.N.Y. 2016)....................6

*George Nelson Found. v. Modernica, Inc.*,
12 F. Supp. 3d 635 (S.D.N.Y. 2014)....................14, 22

*Gill v. Nat'l Football League*,
No. 21 Civ. 1032 (PAE), 2021 WL 5087900 (S.D.N.Y. Nov. 2, 2021)....................11

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
157 F. Supp. 2d 234 (S.D.N.Y. 2000)....................17, 18

*Groq, Inc. v. Groq Health, Inc.*,
No. 1:23-cv-08325 (MKV), 2025 WL 934938 (S.D.N.Y. Mar. 27, 2025)....................22, 23

*GTFM, Inc. v. Solid Clothing, Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002)....................26

*Havana Club Holding, S.A. v. Galleon, S.A.*,
No. 96 Civ. 9655 (SAS), 1998 WL 150983 (S.D.N.Y. Mar. 31, 1998)....................19

*ITC Ltd. v. Punchgini, Inc.*,
482 F.3d 135 (2d Cir. 2007)....................14

*Johnson v. City of Shelby*,
574 U.S. 10, 11 (2014)....................12

*JPMorgan Chase Bank, N.A. v. Nowak*,
No. 23-CV-6834 (JPO), 2024 WL 1329410 (S.D.N.Y. Mar. 28, 2024)....................4, 20

*Kohler Co. v. Bold Int'l FZCO*,
422 F. Supp. 3d 681 (E.D.N.Y. 2018)....................22

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993) ....................13

*Live Brands Holdings, LLC v. Gastronomico Gracias a Dios, Sociedad Responsabilidad Limitada de Cap. Variable*,
No. 20 Civ. 1213 (JPC), 2023 WL 1765915 (S.D.N.Y. Feb. 3, 2023) ....................6

*LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*,
725 F.3d 184 (2d Cir. 2013) ....................9

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006) ....................15, 16, 17, 19

*Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) ....................13

*Meyenhofer v. Larsen & Toubro Infotech Ltd.*,
503 F. Supp. 3d 39 (S.D.N.Y. 2020) ....................27

*Moreno-Godoy v. Kartagener*,
7 F.4th 78 (2d Cir. 2021) ....................12

*MPC Franchise, LLC v. Tarntino*,
826 F.3d 653 (2d Cir. 2016) ....................15

*Murphy v. Am. Home Prods. Corp.*,
58 N.Y.2d 293 (1983) ....................9

*N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Tex.*,
71 F. Supp. 2d 108 (E.D.N.Y. 1999) ....................25, 26

*OBH, Inc. v. Spotlight Mag., Inc.*,
86 F. Supp. 2d 176 (W.D.N.Y. 2000) ....................15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ....................18, 26

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) ....................7, 8

*Penske Media Corp. v. Shutterstock, Inc.*,
548 F. Supp. 3d 370 (S.D.N.Y. 2021) ....................19, 20, 27

*Piano Wellness, LLC v. Williams*,
126 U.S.P.Q.2d 1739, 2018 WL 2455403 (T.T.A.B. 2018) ....................23

*Randi A.J. v. Long Island Surgi-Ctr.*,
46 A.D.3d 74 (2d Dep't 2007) ....................26

*Ross v. Louise Wise Servs., Inc.*,
8 N.Y.3d 478 (2007) ....................26

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ....................10

*Sabre Oxidation Techs., Inc. v. Superior Plus Corp.*,
255 N.Y.S.3d 746 (3d Dep't 2026) ....................7, 8

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
909 F.3d 519 (2d Cir. 2018) ....................26

*Somera Cap. Mgmt., LLC v. Somera Rd., Inc.*,
No. 19 Civ. 8291 (GHW) (GWG), 2020 WL 2506352 (S.D.N.Y. May 15, 2020) ....................21, 22, 23

*Spotlight Ticket Mgmt., Inc. v. Daigle*,
No. 23-CV-10035 (JPO), 2024 WL 3966900 (S.D.N.Y. Aug. 28, 2024) ....................6

*Stetson v. Howard D. Wolf & Assocs.*,
955 F.2d 847 (2d Cir. 1992) ....................14

*United States v. Sliker*,
751 F.2d 477 (2d Cir. 1984) ....................24

*Videri, Inc. v. ONAWHIM (OAW) Inc.*,
No. 1:23-cv-2535-GHW, 2024 WL 4027980 (S.D.N.Y. Sept. 3, 2024) ....................22

*Walton Condo. v. Landmark Am. Ins. Co.*,
No. 25-CV-9454 (JPO), 2026 WL 1875905 (S.D.N.Y. June 30, 2026) ....................4, 13

*We Vote v. LeYeF, LLC*,
Cancellation No. 92066153, 2020 WL 3627080, at *7 (T.T.A.B. June 26, 2020) ....................15

**Statutes**

15 U.S.C.
§ 1064(3) ....................14
§ 1115(b)(2) ....................14
§ 1117 ....................18
§ 1117(a) ....................24, 26
§ 1119 ....................20, 21, 22, 23
§ 1120 .................... *passim*
§ 1127 ....................14

18 U.S.C.
§ 1001 .......... 3

**Other Authorities**

Fed. R. Civ. P.
9(b) .......... 19
12(b)(6) .......... 29
12(f) .......... 24

Fed. R. Evid.
404(b)(2) .......... 24, 25

Loc. Civ. R.
7.1(c) .......... 29

Plaintiffs Yahoo Ad Tech LLC and Yahoo IP Holdings LLC (together, "Yahoo") submit this opposition to the motion to dismiss filed by Defendants Ad.com Interactive Media, Inc. d/b/a AdMedia ("AdMedia") and Danny Bibi (together, "Defendants"). ECF Nos. 32, 33 ("Mot.").

## I. INTRODUCTION

After Yahoo expressly refused to sell its trademark rights, Danny Bibi, the CEO of AdMedia, forged the signature of a Yahoo executive on a fake agreement assigning Yahoo's ADVERTISING.COM trademark registration to AdMedia. AdMedia then recorded the fraudulent assignment with the USPTO, resulting in AdMedia becoming the listed owner of Yahoo's registration. Compl. ¶¶ 4–5, 26–28. Defendants' motion does not, and cannot, deny any of this.

Defendants attempt to recast their forgery as a favor. They speculate that Yahoo would have let the registration lapse anyway, so AdMedia's theft "kept the '052 Registration alive" and cost Yahoo nothing. Mot. at 1–3, 10–12. A retroactive excuse for a fraudulent act neither justifies the conduct nor eliminates liability for it. And the argument ignores the facts: when AdMedia recorded the fraudulent assignment on December 13, 2024, *Yahoo held a live registration* and had more than six months to renew it. Compl. ¶¶ 28, 61; Declaration of Todd S. Sharinn in Support of Motion to Dismiss, ECF No. 34 ("Sharinn Decl."), Ex. 1 at 25. AdMedia could not have known then whether Yahoo intended to renew its registration, and what Yahoo might have done months later is not alleged in the Complaint and cannot be resolved on a motion to dismiss. AdMedia also secretly replaced Yahoo's in-house counsel with its own counsel as attorney of record and correspondent, so that USPTO notices about the registration no longer went to Yahoo. Compl. ¶ 33; Sharinn Decl. Ex. 1 at 3, 17–18. Having hoodwinked the USPTO, AdMedia renewed the registration in its own name, and it then used the stolen registration to support its six subsequent trademark applications. Compl. ¶¶ 32, 34–60, 82–86.

The rest of the motion raises fact disputes and defenses that cannot be decided on the pleadings. The motion should be denied.

## II. STATEMENT OF FACTS

### A. Yahoo Sells the Domain Names but Keeps Its Trademark Rights

Yahoo IP Holdings owns U.S. Trademark Registration No. 2,914,052 for the ADVERTISING.COM design mark (the "'052 Registration"). Compl. ¶¶ 4, 10, 25. When Mr. Bibi negotiated to buy the ad.com and advertising.com domain names (the "Domain Names"), he also asked to buy Yahoo's trademark rights. Yahoo refused. Compl. ¶¶ 3, 20.

The Domain Name Agreement (the "Agreement") reflects that refusal. Compl. Ex. A. The sale [redacted] Compl. ¶ 21; Agreement § 3(i)(i). Until the Domain Names are transferred, Section 1(f) provides that [redacted] The final payment is due November 6, 2026. Mot. at 4.

### B. Mr. Bibi Forges an Assignment and AdMedia Steals the Registration

The fraudulent assignment of the '052 Registration is dated November 4, 2024. Compl. ¶ 26, Ex. B. It bears the forged signature of Yahoo's officer, Matthew Garber, copied from his DocuSign signature on the Agreement without the DocuSign verification data. Compl. ¶¶ 5, 26. Neither Mr. Garber nor Yahoo ever authorized the assignment/forgery. Compl. ¶¶ 5, 29.

AdMedia recorded the fraudulent assignment with the USPTO on December 13, 2024. Compl. ¶¶ 28, 61. That was more than two weeks before the December 30, 2024 renewal

deadline and more than six months before the grace period closed on June 30, 2025. Sharinn Decl. Ex. 1 at 25. Soon after, USPTO records were updated to list AdMedia as owner of the ’052 Registration, all without informing Yahoo. Compl. ¶¶ 30–31, 33; Sharinn Decl. Ex. 1 at 3, 17–18.

AdMedia then treated the ‘052 Registration as its own. On December 30, 2024, it filed a combined Section 8 and 9 declaration in its own name. Compl. ¶¶ 32, 82. In that same filing, and again without informing Yahoo, AdMedia replaced Yahoo’s in-house counsel with its own counsel as attorney of record and correspondent, so USPTO correspondence about the registration went to AdMedia’s counsel, not to Yahoo. Compl. ¶ 33; Sharinn Decl. Ex. 1 at 3, 17–18. AdMedia’s counsel signed the declaration under the warning that willful false statements are punishable under 18 U.S.C. § 1001, attesting that the mark was in use in commerce by AdMedia as “owner.” Sharinn Decl. Ex. 1 at 20–22. AdMedia then relied on the ’052 Registration in what became six new trademark applications, in claims of acquired distinctiveness under Section 2(f) and in Petitions to Make Special filed March 4, 2025. Compl. ¶¶ 34–60, 83. Two applications claimed Yahoo’s own January 17, 2000 first-use date. Compl. ¶¶ 35, 58. The USPTO relied on these filings. It recorded the transfer, accepted the renewal, granted the petitions, accepted the Section 2(f) claims, and approved three applications for publication. Compl. ¶ 86.

Yahoo lost record ownership of its registration. It has spent time and money uncovering AdMedia’s fraud and preparing and filing a corrective assignment with the USPTO, and its rights and goodwill in the mark have been harmed. Compl. ¶¶ 77, 87.

### C. <u>This Is Not the First Time</u>

Defendants have a history of fraudulent conduct. In June 2016, an arbitration panel found that Mr. Bibi, as AdMedia’s CEO, registered and used a domain name in bad faith to typosquat

on Oracle's ORACLE mark. Compl. ¶ 68. In March 2020, in a bankruptcy proceeding, a Chapter 7 trustee brought an adversary proceeding alleging that Mr. Bibi caused the debtor to transfer more than $571,000 in assets and customer information to AdMedia and another Bibi company with actual intent to defraud creditors. Compl. ¶ 70. The trustee also alleged that Mr. Bibi gave materially false testimony under penalty of perjury and filed pleadings containing materially false information. *Id*. In July 2020, a WIPO panel found that a UDRP complaint filed by an AdMedia affiliate "contains false statements and evidence designed to mislead the Panel," including a registrar invoice showing a renewal that could not have occurred. Compl. ¶¶ 65–66. The panel also rejected an email the respondent said AdMedia had fabricated. Compl. ¶ 67. In June 2021, Engage BDR sued AdMedia and Mr. Bibi, alleging that Mr. Bibi had a counterparty's signature block transferred from a genuine document onto a fabricated agreement; a questioned-document examiner concluded the signatures were "transferred from another document." Compl. ¶ 71. And in a pending federal suit filed in November 2025, Nomix Group alleges that AdMedia learned of a business partner's marks and then filed USPTO applications for them, one claiming a false first-use date. Compl. ¶ 69.

## III. <u>LEGAL STANDARD</u>

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts the well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Walton Condo. v. Landmark Am. Ins. Co.*, No. 25-CV-9454 (JPO), 2026 WL 1875905, at *2 (S.D.N.Y. June 30, 2026). A "factual dispute . . . is not appropriate for resolution on [a] motion to dismiss." *JPMorgan Chase Bank, N.A. v. Nowak*, No. 23-CV-6834 (JPO), 2024 WL 1329410, at *4 (S.D.N.Y. Mar. 28, 2024) (citation omitted).

## IV. ARGUMENT

### A. Count I States A Claim for Breach of Contract

#### 1. Yahoo Pleads Every Element

A breach of contract claim requires a contract, the plaintiff's performance, the defendant's breach, and damages. *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022). Yahoo sufficiently pleads each element. The signed Agreement is attached. Compl. ¶ 74 & Ex. A. Yahoo performed. Compl. ¶¶ 24, 75. AdMedia breached Section 1(f) by forging and recording the assignment, filing applications for ADVERTISING.COM, and using the '052 Registration in its USPTO filings. Compl. ¶ 76(a)–(e). AdMedia breached Section 3(i)(i) by exploiting Yahoo's registration and Yahoo's first-use date to support its own USPTO filings. Compl. ¶¶ 35–36, 58–59, 76(f). And Yahoo was damaged. Compl. ¶¶ 77–78.

Defendants do not dispute that the Agreement exists or that Yahoo performed. They challenge only breach and damages. As shown below, each challenge fails.

#### 2. AdMedia Breached Section 1(f) While It Was in Force

Section 1(f) provides [redacted] AdMedia did exactly that, again and again, from December 2024 through January 2026. It forged and recorded an assignment of Yahoo's '052 Registration, which covers the ADVERTISING.COM design mark (a logo incorporating the words "advertising.com"), reproduced below:

Sharinn Decl. Ex. 1 at 2; *see also* Compl. Ex. C. AdMedia also filed applications for the ADVERTISING.COM word mark (the words “advertising.com” alone), and relied on the ’052 Registration in its USPTO filings. Compl. ¶¶ 61, 76(a)–(e). Its renewal specimen was itself a screenshot of the advertising.com website displaying the ADVERTISING.COM design mark—a use of the Domain Name as a trademark, and of a mark Yahoo had expressly refused to sell. Sharinn Decl. Ex. 1 at 18–19; Compl. ¶¶ 3, 20–21.

Defendants do not dispute that Section 1(f) was in force when every one of these acts occurred. Mot. at 7–8. Defendants nonetheless argue that [redacted], so they did nothing wrong. Mot. at 1–2, 7–9. That argument fails because a breach of contract claim accrues at the time of breach. *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402–03 (1993) (holding that a contract claim accrues when the breach occurs, even if no damage occurs until later). “The salient question is not whether the parties remain bound by the terms of the contract at the time of litigation, but whether they were bound by the contract at the time of the alleged breach.” *Live Brands Holdings, LLC v. Gastronomico Gracias a Dios, Sociedad Responsabilidad Limitada de Cap. Variable*, No. 20 Civ. 1213 (JPC), 2023 WL 1765915, at *4 (S.D.N.Y. Feb. 3, 2023) (rejecting argument that the agreement’s expiration made its terms unenforceable and denying motion to dismiss). Applying the same rule, this Court “look[s] to the situation at the time of [the defendant’s] breach,” and a later breach “might offset any damages suffered from [the defendant’s] earlier breach, but it does not excuse [the defendant’s] prior behavior.” *Spotlight Ticket Mgmt., Inc. v. Daigle*, No. 23-CV-10035 (JPO), 2024 WL 3966900, at *5 (S.D.N.Y. Aug. 28, 2024) (quoting *Evolution Mkts., Inc. v. Alpental Energy Partners, LLC*, 221 F. Supp. 3d 361, 371 (S.D.N.Y. 2016)).

Section 2(d) does not help Defendants. [redacted] AdMedia breached Section 1(f) while it was in force, and that breach is actionable now.

In addition, Section 2(d) expressly [redacted] So even on Defendants' reading of Section 1(f), the Section 3(i)(i) breaches discussed below in Part IV.A.5 remain actionable.

**3. Materiality Is Not an Element**

Defendants argue that Yahoo's breach of contract claim fails because no breach was "material." Mot. at 7, 9, 16 (citing *Sabre Oxidation Techs., Inc. v. Superior Plus Corp.*, 255 N.Y.S.3d 746, 753 (3d Dep't 2026); *Bisk v. Cooper Square Realty, Inc.*, 115 A.D.3d 419 (1st Dep't 2014)). This is incorrect. Yahoo must plead a breach, not a material one. Materiality is not an element of a contract claim. New York courts "routinely allow a nonbreaching party to seek damages, not only for a material breach, but also for a minor, or immaterial, breach," because materiality "only goes to the question of the type of remedy that may be allowed, not to the issue of liability." *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (citation omitted) (vacating dismissal of contract claim under New York law).

Defendants' cases are irrelevant and address whether a party may stop performing or rescind. Yahoo seeks neither; it seeks damages. And even if materiality were relevant here (it is not), *Sabre Oxidation* itself held that materiality presented "an issue of fact that is best left to the factfinder." *Sabre Oxidation*, 255 N.Y.S.3d at 754; *accord Orlander*, 802 F.3d at 298. Materiality is no basis for dismissal.

**4. The Implied Covenant Cannot Give AdMedia What Yahoo Refused to Sell**

Defendants argue that the Agreement, or at least the implied covenant of good faith and fair dealing, prohibited Yahoo from continuing to use the mark and therefore excuses Defendants' breach. Mot. at 2–3, 9. It does not. Section 1(f) [redacted] and its taking of a trademark registration whose dominant element is ADVERTISING.COM does exactly that.

In any event, Defendants' argument that Yahoo could not continue to use the mark is belied by the Agreement's plain language. The parties bargained over the trademark rights, and Yahoo kept them. Mr. Bibi asked to buy Yahoo's trademark rights. Yahoo said no. The Agreement says [redacted] Compl. ¶¶ 3, 20–21. Section 1(e) [redacted]. Agreement § 1(e). For example, Yahoo could have used the mark without using the Domain Names (e.g., on a website with a domain name other than advertising.com or ad.com), or otherwise used the design mark without impairing AdMedia's use of the Domain Names. Section 1(e) also [redacted] Agreement §§ 1(e), 2(b)–(c). Signing the Agreement was not an abandonment by Yahoo of its trademark rights.

The implied covenant cannot undo that bargain and impose restrictions on Yahoo "inconsistent with other terms of the contractual relationship." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)). Nor can it "create duties that negate explicit rights under a contract." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013). The implied covenant "cannot be used to add a new term to a contract, especially to a commercial contract between two sophisticated commercial parties represented by counsel." *Id.* at 196 (quoting *D & L Holdings, LLC v. RCG Goldman Co.*, 287 A.D.2d 65, 73 (1st Dep't 2001)). Defendants argue that, under *511 W. 232nd*, a reasonable buyer would expect Yahoo not to keep trademark rights in ADVERTISING.COM. Mot. at 2–3, 9. But that case defeats the argument: the very passage Defendants rely on bars using the implied covenant to impose a term inconsistent with the express contract (such as Agreement §§ 1(f) and 3(i)(i)), and that is precisely what Defendants ask the Court to do.

Nor does the fact that Section 1(f)(D)'s [redacted]

In short, Defendants' implied covenant theory does not excuse their breach.

### 5. AdMedia Breached Section 3(i)(i)

Section 3(i)(i) provides that [redacted] Agreement § 3(i)(i). It [redacted] *Id.* § 3(i)(i)(c). To

plead a breach, Yahoo must allege that AdMedia exploited content Yahoo used with the Domain Names. Yahoo does so.

Defendants argue that the Complaint does not say what "content" AdMedia exploited. Mot. at 10. But the Complaint and its exhibits make the content plain: Yahoo's ADVERTISING.COM design mark as used on the advertising.com website, with a first-use date of January 17, 2000. Compl. ¶¶ 4, 25, 58 & Ex. C. AdMedia took that content and treated it as its own. First, it renewed Yahoo's trademark registration using, as AdMedia's specimen, a screenshot of the advertising.com website displaying the trademark owned by Yahoo. Compl. ¶¶ 32, 82; Sharinn Decl. Ex. 1 at 18–19. Second, AdMedia then claimed ownership of the '052 Registration in its ADVERTISING.NET, ADVERT.COM, and ADVERTISE.COM applications. Compl. ¶¶ 45, 55, 59. And third, for ADVERTISE.COM, as with its ADVERTISING.COM application, it claimed Yahoo's own January 17, 2000 first-use date. Compl. ¶¶ 35, 58. Each of these USPTO filings "relied upon or [was] furthered by" AdMedia's use of Yahoo's trademark registration. Compl. ¶ 76(f).

The USPTO record that Defendants ask the Court to notice shows what AdMedia did with that content. Sharinn Decl. Ex. 1 at 18–19. The Court may consider that record to show what AdMedia filed. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Defendants have fair notice of the breach.

Defendants also argue that Section 1(f) cannot [redacted] Mot. at 10. But that argument does not dispose of Yahoo's claim as to those applications. In Count I, Yahoo pleads the filing of those applications as a breach of Section 3(i)(i), which [redacted]

[redacted] Compl. ¶¶ 21, 76(f); Agreement § 3(i)(i)(c). AdMedia did exactly that: it claimed ownership of Yahoo's '052 Registration in each trademark application and, in the ADVERTISE.COM trademark application, claimed Yahoo's own January 17, 2000 first-use date. Compl. ¶¶ 45, 55, 58–59, 76(f). Nothing in Section 3(i)(i) requires that the new marks themselves be Domain Names. And unlike Section 1(f), Section 3(i) expressly [redacted] so Defendants' argument that Section 1(f) [redacted] has no bearing on this breach.

The same USPTO filings breach Section 3(i)(i) in a second way. That section also [redacted] Agreement § 3(i)(i)(b); *see* Compl. ¶ 76(f). AdMedia told the USPTO that it had filed an assignment of Yahoo's registration "in order to transfer ownership of that trademark to Applicant," and then held itself out as the registration's owner in a renewal declaration and in its subsequent trademark applications. Compl. ¶¶ 32, 35–36, 59, 83.

It also breached Section 3(i)(i) by claiming Yahoo's January 17, 2000 first-use date as its own, nearly twenty-five years before AdMedia signed the Agreement. Compl. ¶¶ 17, 35, 58 & Ex. C. A claim to Yahoo's registration and Yahoo's use history is a statement that AdMedia succeeded to Yahoo's business. The Complaint identifies Section 3(i)(i) by number, and the full Agreement is part of the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (complaint includes any written instrument attached as an exhibit or incorporated by reference). Where a complaint "clearly sets out [the defendant's] central contractual obligation . . . and [its] asserted breach," it adequately pleads breach of contract. *Gill v. Nat'l Football League*, No. 21 Civ. 1032 (PAE), 2021 WL 5087900, at *6 (S.D.N.Y. Nov. 2, 2021). The federal rules

"do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). The Section 3(i)(i) breaches are adequately pleaded.

### 6. Yahoo Pleads Damages

The Complaint pleads concrete damages: the loss of the '052 Registration, the cost of investigating the forgery and preparing a corrective assignment, and harm to Yahoo's rights and goodwill in the mark, along with punitive damages and fees under Section 5(g). Compl. ¶¶ 23, 77–78. Defendants do not dispute that these are cognizable harms. Instead, their main argument is that the registration would have lapsed anyway, so Yahoo lost nothing. Mot. at 2–3, 10–12. This argument fails for four reasons.

*First*, damages are measured at the time of breach, not with hindsight. "[T]he general rule is that damages for breach of contract are computed at the time of breach," and "New York courts reject damages awards calculated with the benefit of hindsight." *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85–86 (2d Cir. 2021) (citations omitted) (holding that even if performance "would [not] have done" the plaintiff "any good" in hindsight, that "does not negate [his] ability to demonstrate expectation damages"). On December 13, 2024, Yahoo held a live registration with more than six months to renew. Compl. ¶ 61; Sharinn Decl. Ex. 1 at 25. Defendants' assumption about what Yahoo would have done later goes beyond the Complaint and, in any event, does not bear on damages measured at the time of breach. Nor does Section 1(e) show that Yahoo "could not" renew. Mot. at 11. As explained above, Section 1(e) [redacted] *See supra* Part IV.A.4; Agreement § 1(e).

*Second*, a lapse is not a transfer. A lapsed registration belongs to no one. AdMedia renewed Yahoo's trademark registration in its own name and now holds it, along with the

priority that comes with it, based on use dating back to January 17, 2000. Compl. ¶¶ 25, 82, 86; Sharinn Decl. Ex. 1 at 2. If AdMedia believed the registration would lapse, it could have waited and applied for its own registration. Instead, it chose to steal Yahoo's, and with it more than two decades of priority.

*Third*, Yahoo pleads losses that do not depend on renewal: the cost of finding the forgery and preparing a corrective assignment to fix the USPTO record. Compl. ¶ 77. These costs flow directly from the breach and are recoverable. *See Aero Garage Corp. v. Hirschfeld*, 185 A.D.2d 775, 776 (1st Dep't 1992) (affirming award of legal fees the plaintiff spent obtaining a certificate of occupancy the defendant was obligated to provide, because those fees were "directly occasioned and made necessary by" the breach (quoting *City of Elmira v. Larry Walter, Inc.*, 150 A.D.2d 129, 133 (3d Dep't 1989), *aff'd*, 76 N.Y.2d 912 (1990))); *see also Congel v. Malfitano*, 31 N.Y.3d 272, 291–92 (2018) (distinguishing such expenses from litigation fees barred by the American Rule). There is "no heightened pleading requirement" for consequential damages, and whether they were foreseeable "should not be decided on a motion to dismiss." *Walton*, 2026 WL 1875905, at *3 (quoting *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 168 A.D.3d 505, 507 (1st Dep't 2019)).

*Fourth*, nominal damages are always available for breach of contract, so Count I survives regardless. *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) ("Nominal damages are always available in breach of contract actions."); *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (holding that even if the plaintiff's "allegations of substantial damages were . . . too 'speculative' to support its claims," it "would have plausible claims for nominal damages"). Punitive damages and attorneys' fees under Section 5(g) also remain available. Compl. ¶¶ 23, 78. Count I adequately pleads damages.

### 7. Abandonment Cannot Be Decided on the Pleadings

Defendants argue that Yahoo abandoned the trademark by selling the Domain Names and by letting the registration lapse. Mot. at 11–12. Abandonment is a trademark-law concept, and Defendants invoke it here only to argue that Yahoo lost nothing of value and so suffered no contract damages or Section 1120 injury. Mot. at 11–12, 14–15. But abandonment is beside the point. Even if Defendants could prove it, abandonment would mean at most that the registration should have lapsed, not that AdMedia was free to forge an assignment and take the registration, its priority, and its goodwill for itself. Compl. ¶¶ 81–86. In any event, the argument fails on its own terms.

Abandonment may be raised defensively, as an affirmative defense to infringement, or offensively, as a ground for canceling a registration. 15 U.S.C. §§ 1064(3), 1115(b)(2); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007). Either way, the party asserting it "bears the burden of persuasion." *ITC*, 482 F.3d at 147. Defendants must show both "non-use of the [mark] by the legal owner" and "no intent by that person or entity to resume use in the reasonably foreseeable future." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 169 (2d Cir. 2016) (quoting *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir. 1992)). Intent is a fact question. *See George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 646 & n.6, 658 (S.D.N.Y. 2014) (denying motion to dismiss on abandonment because the complaint alleged "facts that are inconsistent with an intent to abandon," and USPTO filings offered to show nonuse "at most raise[d] a question of fact not suitable for disposition on a motion to dismiss"). Defendants point to less than three years of nonuse, so no statutory presumption applies. 15 U.S.C. § 1127.

Even if abandonment were relevant (it is not), Defendants could not establish it here. Yahoo IP Holdings owns the '052 Registration and never authorized its assignment. Compl. ¶¶

10, 25, 29, 91. Domain names and trademarks are distinct, and Yahoo sold only the Domain Names and not the trademark rights. Compl. ¶¶ 17, 21. Registering a domain name "does not itself confer any trademark rights on the registrant." *OBH, Inc. v. Spotlight Mag., Inc.*, 86 F. Supp. 2d 176, 180 (W.D.N.Y. 2000) (citation omitted). And an agreement that conveys a domain name but "[a]ny associated trademark rights are not mentioned" conveys "the domain name and nothing more." *We Vote v. LeYeF, LLC*, Cancellation No. 92066153, 2020 WL 3627080, at *7 (T.T.A.B. June 26, 2020) (non-precedential). The Agreement itself contemplates that the Domain Names may return to Yahoo, which is inconsistent with any intent to abandon. See supra Part IV.A.4. Nor did the registration lapse. AdMedia renewed it in its own name, and it remains live today. Compl. ¶¶ 32, 82, 86; see supra Part IV.A.6.

And AdMedia itself recorded the mark as assignable and swore it was in use, so it cannot claim otherwise. Compl. ¶¶ 28, 32, 82. Regardless, abandonment is a question for discovery, not a ground for dismissal.

### B. <u>Count II States A Claim Under 15 U.S.C. § 1120 (Fraud on the USPTO)</u>

#### 1. Yahoo Pleads Every Element

Any person who procures a registration "by a false or fraudulent declaration or representation" is liable to "any person injured thereby." 15 U.S.C. § 1120. The plaintiff must plead a false representation regarding a material fact, knowledge of its falsity, intent to induce reliance, reasonable reliance by the USPTO, and "damage proximately resulting from such reliance." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 2807213, at *4–5 (S.D.N.Y. Sept. 28, 2006) (denying motion to dismiss fraud-on-the-USPTO counterclaim); *see also MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658–60 (2d Cir. 2016) (setting out the standard for fraudulent procurement).

Yahoo pleads each element. AdMedia recorded a forged assignment agreement, filed a Section 8 and 9 declaration as the false owner of the trademark registration, and relied on the registration in its subsequent applications, Section 2(f) claims, and Petitions to Make Special. Compl. ¶¶ 81–83. Mr. Bibi created the assignment knowing Yahoo had refused to sell its trademark rights. Compl. ¶¶ 3, 20, 26–28, 84. The USPTO relied on each filing. Compl. ¶ 86. And Yahoo was injured. Compl. ¶ 87. Defendants challenge only injury.

#### 2. AdMedia's Fraudulent Procurement and Use of the Registration Injured Yahoo, and That Injury Does Not Depend on Attorneys' Fees

Yahoo's injury is concrete. AdMedia did not merely record a forged assignment. It used Yahoo's registration to build competing rights in Yahoo's mark. AdMedia renewed the '052 Registration in its own name and relied on it in six new trademark applications, Section 2(f) claims, and Petitions to Make Special, and two applications claimed Yahoo's own January 17, 2000 first-use date. Compl. ¶¶ 34–60, 82–83. The USPTO relied on those filings and approved three applications for publication. Compl. ¶ 86. Three of AdMedia's applications have since registered. *See infra* Part IV.C.2. AdMedia's fraudulent procurement and use of the registration have harmed Yahoo's rights and goodwill in the mark. Compl. ¶ 87. It has also forced Yahoo to spend time and money uncovering the forgery and preparing a corrective assignment to restore the USPTO record. Compl. ¶¶ 77, 87.

Defendants contend that Yahoo cannot plead injury because it lost nothing of value when AdMedia took the registration. Mot. at 14–15. But Section 1120 injury is not limited to losing a registration the plaintiff would otherwise have kept. Defendants' own authority shows as much. *Louis Vuitton*, which Defendants cite for the elements, Mot. at 14, refused to dismiss a fraud-on-the-USPTO counterclaim. 2006 WL 2807213, at *4–5. There, Louis Vuitton's registration was allegedly procured and maintained in part through false filings, including a Section 8 and 15

declaration, and the counterclaim alleged that it damaged Dooney & Bourke "by providing [Louis Vuitton] with an illicitly gained registration upon which [Louis Vuitton] has grounded in part [its] claims in this case." *Id.* at *4. The court held that the counterclaim sufficiently pleaded "damage proximately resulting from such reliance." *Id.* at *5. Here, AdMedia has likewise used Yahoo's fraudulently obtained registration, repeatedly, at the USPTO to build its own rights in Yahoo's mark and subsequent applications. Compl. ¶¶ 34–60, 82–86. That it did so in USPTO filings rather than a lawsuit makes no difference; in both cases, the injury flows from use of a fraudulently obtained registration against the party it harms.

Defendants' remaining points repeat their contract arguments and fail for the same reasons. First, Defendants argue that the registration would have lapsed anyway. Mot. at 3, 14. That theory relies on facts outside the Complaint, is a factual dispute not suitable for a motion to dismiss, and regardless, a potentially lapsed registration does not equate to a transferred registration: a lapsed registration belongs to no one, whereas AdMedia now holds Yahoo's registration in its own name. *See supra* Part IV.A.6. Second, Defendants point to Yahoo's allegation that it did not learn of the assignment until around the time it filed suit. Mot. at 11, 14. But that Yahoo discovered Defendants' fraud only recently shows that the forgery worked, not that Yahoo was unharmed. Compl. ¶¶ 29–30. Third, Defendants argue that any attempt by Yahoo to retain rights in the mark would breach the implied covenant of good faith and fair dealing. Mot. at 14. That argument fails because the Agreement conveyed only the Domain Names, not the trademark. *See supra* Part IV.A.4.

Finally, Defendants' reliance on *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 242–43 (S.D.N.Y. 2000), is misplaced. Mot. at 14–15. Defendants cite it for the proposition that attorneys' fees are ordinarily not recoverable under Section 1120. *Id.* But that

rule concerns attorneys' fees for litigation. *GMA Accessories*, 157 F. Supp. 2d at 243. Yahoo's Section 1120 injury does not depend on its fees in this action. Separate from those fees, Yahoo pleads the out-of-pocket costs it incurred, before suit, to uncover the forgery and to prepare and file a corrective assignment so that the USPTO record would again show Yahoo as owner. Compl. ¶¶ 77, 87. Those remedial costs are "damages sustained in consequence" of the fraudulent registration, 15 U.S.C. § 1120, because they were directly occasioned by AdMedia's fraud. *See supra* Part IV.A.6.

Nor does anything else in *GMA Accessories* help Defendants. There, the counterclaimant sought "damages as a result of [the counterclaim-defendant's] improper federal trademark registration applications" without saying which mark it was challenging, and it "failed to plead two elements of its fraud claim—causation and damages—at all," not having "even made the conclusory allegation that it lost sales." *GMA Accessories*, 157 F. Supp. 2d at 242–43. Yahoo, by contrast, challenges a registered mark, the '052 Registration, Compl. ¶¶ 81–83, and pleads concrete injury caused by AdMedia's fraud: the loss of record ownership of Yahoo's registration, and the priority that comes with it, and harm to Yahoo's rights and goodwill as AdMedia used that registration to build its own rights in Yahoo's mark. Compl. ¶¶ 34–60, 86–87.

Yahoo's fees are recoverable on separate grounds, under Section 5(g) of the Agreement and, in an exceptional case, 15 U.S.C. § 1117. Compl. ¶ 23; *id.* at 28 (Prayer for Relief ¶ H); *see infra* Part IV.D. Whether to award them is a question for later. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (exceptional-case determination is a "case-by-case exercise of [the court's] discretion, considering the totality of the circumstances"). Yahoo adequately pleads injury under Section 1120.

### 3. Rule 9(b) Is Satisfied

Rule 9(b) requires a party alleging fraud to state the circumstances with particularity, but knowledge and intent "may be alleged generally." Fed. R. Civ. P. 9(b). A fraud-on-the-USPTO claim meets that standard where it identifies the filings, the false representations, knowledge of their falsity, intent to induce reliance, the USPTO's reliance, and the resulting damage. *See Louis Vuitton*, 2006 WL 2807213, at *5. The Complaint does all of that. It identifies who (Mr. Bibi and AdMedia), what (the forged assignment and false declaration), when (recorded December 13, 2024; declaration filed December 30, 2024; petitions filed March 4, 2025), and where (the USPTO, Reel 8680, Frame 0701). Compl. ¶¶ 4–5, 26–28, 32, 37, 46, 81–85. Defendants raise Rule 9(b) in a single sentence, only in support of their injury argument, and do not challenge the particularity of the fraud allegations. Mot. at 14–15; *see Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (treating fair use defense as waived for purposes of motion to dismiss where movant devoted a single sentence to it in its opening brief and developed it only on reply).

Defendants' only authority, *Havana Club*, does not help them. There, the court dismissed a Section 1120 counterclaim because the counterclaimants made "only a conclusory allegation" of lost sales, and their allegations were "so sparse, and their apparent theory of how sales were lost so byzantine," that the other side lacked fair notice. *Havana Club Holding, S.A. v. Galleon, S.A.*, No. 96 Civ. 9655 (SAS), 1998 WL 150983, at *3 (S.D.N.Y. Mar. 31, 1998). That theory required the court to speculate that threats of litigation deterred some sales but not others. *Id.* Yahoo's theory requires no speculation. AdMedia forged an assignment, recorded it before the renewal deadline, took record ownership, renewed the registration in its own name, and used it at the USPTO to procure additional registrations, all to the detriment of Yahoo's trademark rights and related goodwill. Compl. ¶¶ 81–87. Rule 9(b) is satisfied.

**4. Defendants Make No Separate Argument as to Mr. Bibi**

Mr. Bibi signed the forged assignment and the declarations supporting the Petitions to Make Special. Compl. ¶¶ 12, 26–28, 81. Although Mr. Bibi joins the motion, Mot. at 1, the brief addresses only AdMedia's conduct and never argues that any claim fails as to Mr. Bibi personally. A ground for dismissal that a movant does not argue is not a basis for dismissal. *See Nowak*, 2024 WL 1329410, at *3, *5 (denying motion to dismiss on grounds the movant named but did not support with "any substantive argument," and declining to dismiss a count where the movant "provide[d] no argument as to why the Court should dismiss" it); *Penske,* 548 F. Supp. 3d at 381 (refusing to consider argument raised in a single sentence of opening brief). The claims against Mr. Bibi should proceed.

**C. <u>Count III States A Claim Under 15 U.S.C. § 1119 (Rectification of the Register)</u>**

**1. Count III Proceeds as to the '052 Registration**

"In any action involving a registered mark," the Court may "rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. This action involves the '052 Registration. Compl. ¶ 90. Defendants do not seek dismissal as to it. Count III survives on that basis alone.

**2. The Court May Reach the Related Applications**

Defendants argue that the Court may rectify the register only "with respect to the **<u>registrations</u>** of any party to the action," and therefore Count III should be dismissed at least as to AdMedia's unregistered trademark applications. Mot. at 12–13 (emphasis in Motion). But that is only one of the powers Section 1119 confers. The statute separately authorizes the Court to "determine the right to registration" of "any party to the action," a power that would add nothing

if it reached only marks already registered. 15 U.S.C. § 1119. Because the ’052 Registration is properly at issue, the related applications are too.

Addressing the question directly, the Ninth Circuit held that “[t]he plain language of § 1119 . . . grants a district court jurisdiction to consider challenges to the trademark applications of a party to the action if the action involves a registered trademark.” *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 670 (9th Cir. 2024).

In *Somera*, a report and recommendation in this District likewise recognized that Section 1119 reaches applications where the applicant is a party and the application is “for a mark sufficiently related to a registered mark over which the court had jurisdiction.” *Somera Cap. Mgmt., LLC v. Somera Rd., Inc.*, No. 19 Civ. 8291 (GHW) (GWG), 2020 WL 2506352, at *5–6 (S.D.N.Y. May 15, 2020) (recommending denial of motion to dismiss counterclaim challenging SOMERA applications that were related to the SOMERA CAPITAL MANAGEMENT registration in suit). The recommendation was not adopted because the case settled, but its reasoning applies here.

As in *Somera*, this Court has authority to consider Count III because of the close nexus between the applications and the ’052 Registration. Deciding the applications here also serves the interest *BBK* identified in “resolving all registration disputes in a single action.” *BBK*, 97 F.4th at 671. AdMedia filed every one of its applications citing the ’052 Registration, and relied on it—and the use dating back to January 17, 2000 that stands behind it—to claim acquired distinctiveness and obtain expedited examination. Compl. ¶¶ 34–60, 92. The one application still pending, ADVERTISE.COM, claims both ownership of the ’052 Registration and its January 17, 2000 first-use date. Compl. ¶¶ 58–59; Declaration of Evan S. Nadel in Support of Opposition (“Nadel Decl.”) Ex. 1. As for the rest of the applications that were identified in the Complaint,

Defendants' argument is moot because they have since registered or been abandoned: ADVERTISING.COM and ADVERTISING.NET registered on June 23, 2026; ADVERT.COM registered on August 11, 2026; and the two parent applications were abandoned on September 8, 2026. Nadel Decl. Exs. 2–6. The Court may take judicial notice of what these USPTO records show, as Defendants ask it to do for the '052 Registration. Mot. at 5 n.1; *see Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 1:23-cv-2535-GHW, 2024 WL 4027980, at *8 (S.D.N.Y. Sept. 3, 2024) (taking judicial notice of the contents of USPTO records on motion to dismiss); *George Nelson*, 12 F. Supp. 3d at 643 (taking judicial notice of trademark registrations and pending applications to establish that they were filed and what they state). Section 1119 reaches the new registrations directly.

Defendants argue that Section 1119 does not reach pending applications, relying on *Adidas* and *Groq*. Mot. at 12–13. On the claims before them, the courts in those cases followed the general rule that, because the "key term" in Section 1119 is "registered," the statute "gives district courts authority to cancel registered marks, not pending trademark registrations." *Adidas Am., Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 163 (S.D.N.Y. 2022) (quoting *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 739 (E.D.N.Y. 2018)); *see Groq, Inc. v. Groq Health, Inc.*, No. 1:23-cv-08325 (MKV), 2025 WL 934938, at *6–7 (S.D.N.Y. Mar. 27, 2025). But neither court rejected the exception recognized in *Somera*.

Neither *Adidas* nor *Groq* involved what this case does: pending applications tied to a registration that is itself challenged in the action. *Adidas* distinguished *Somera* as "actually inapt" on its facts, because there "the pending applications belonged to the party that already had a registered mark that was also being challenged in court." By contrast, the complaint in *Adidas* did "not challenge any registered mark." *Adidas,* 599 F. Supp. 3d at 163.

*Groq* likewise distinguished *Somera* because the counterclaims before it did "not involve any registered mark" and the defendants were "not simultaneously challenging a registered mark." *Groq,* 2025 WL 934938, at *7. *Groq* also declined to follow *BBK*, but it separately observed that the defendants sought to apply *BBK* "beyond the facts of that case," where "the owner of a registered trademark sued a defendant for infringement and sought to cancel the defendant's pending applications to register allegedly infringing marks." *Id.* at *6. This case presents *BBK*'s facts, a registered-mark owner seeking to cancel the defendant's pending applications, and more: the very registration on which AdMedia's applications depend is itself the subject of Yahoo's challenge. Compl. ¶ 90.

In sum, Defendants' dismissal argument should be rejected because the case law supports otherwise and because the issue is moot as to all but one of the applications, the rest having since registered or been abandoned. For the same reasons, there is no basis to strike paragraphs 92 and 93.

#### 3. Alternatively, the Court May Order AdMedia to Withdraw Its Applications

Even apart from Section 1119, the Court may order a party to withdraw its applications. *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341, 348–49, 356 (S.D.N.Y. 2003) (holding defendant in civil contempt of injunction and ordering that "[p]ending applications . . . must be withdrawn forthwith"). Defendants' own TTAB authority agrees: "Article III courts have broad powers over the parties' actions, including the power to issue injunctive orders in personam directing that one or more of the parties before it take or refrain from taking certain actions, such as assigning or abandoning a trademark application that is pending in the USPTO." *Piano Wellness, LLC v. Williams*, 126 U.S.P.Q.2d 1739, 1741, 2018 WL 2455403, at *2 (T.T.A.B. 2018). Yahoo seeks that relief. Compl. at 27–28 (Prayer for Relief

¶¶ D, G). At a minimum, any dismissal of Count III should be without prejudice given that some applications pending at the time of the Complaint have now become registrations.

**D. Section D of the Complaint Should Not Be Stricken**

Rule 12(f) permits the Court to strike "immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), but such motions are disfavored. To strike allegations as immaterial, a movant must show three things: no evidence in support of them would be admissible, they have no bearing on the issues in the case, and letting them stand would prejudice the movant. *Dubai Equine Hosp. v. Equine Imaging, LLC*, No. 18-CV-6925 (VSB), 2019 WL 3811922, at *2–3 (S.D.N.Y. Aug. 14, 2019) (denying motion to strike where the movant could not show the allegations were inadmissible for any purpose).

The Complaint's allegations in Section D are material to at least three issues: AdMedia's intent under Count II, punitive damages under Count I, and whether this is an exceptional case under 15 U.S.C. § 1117(a). First, intent. Yahoo must prove that Mr. Bibi knew the assignment was false and intended the USPTO to rely on it. Compl. ¶¶ 26–28, 81. Defendants may claim the signature was a mistake or that the transfer was authorized. Prior acts are admissible to rebut exactly those defenses, to show "intent, preparation, plan, knowledge, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit takes an "inclusionary" approach under which such evidence is admissible "unless it is introduced for the sole purpose of showing a defendant's bad character." *Carroll v. Trump*, 124 F.4th 140, 157 (2d Cir. 2024). A pattern may be shown by "characteristics . . . sufficiently idiosyncratic to permit a fair inference of a pattern's existence," and the similarities "need not be complete." *Id.* at 168 (quoting *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984)).

The allegations in Section D mirror the scheme pleaded here. The 2016 Oracle panel found that Mr. Bibi registered and used a domain name in bad faith to trade on another

company's mark. Compl. ¶ 68. Here, AdMedia used the fraudulent assignment to trade on Yahoo's mark. Compl. ¶¶ 34–60. The bankruptcy trustee alleged in 2020 that Mr. Bibi moved another company's assets to AdMedia with intent to defraud, and that he gave false sworn testimony and filed false pleadings. Compl. ¶ 70. Here, Yahoo alleges that Mr. Bibi moved Yahoo's registration to AdMedia through false filings with a federal agency. Compl. ¶¶ 81–85. Later in 2020, a WIPO panel found that an AdMedia affiliate submitted fabricated evidence to an adjudicator to steal a domain name. Compl. ¶¶ 65–67. Here, AdMedia submitted a forged assignment to the USPTO to take a registration Yahoo had refused to sell. Compl. ¶¶ 3, 20, 81–86.

Engage BDR's 2021 suit alleges the same technique: lifting a counterparty's signature from a genuine agreement and pasting it onto a fabricated document, then using that document to obtain a benefit. Compl. ¶ 71. That is what Yahoo alleges Mr. Bibi did with Mr. Garber's DocuSign signature. Compl. ¶¶ 26–28. And in its 2025 suit, Nomix alleges that AdMedia learned of a business partner's marks and then filed USPTO applications with a false first-use date. Compl. ¶ 69. Here, AdMedia filed documents with the USPTO claiming Yahoo's first-use date. Compl. ¶¶ 35, 58. Each proceeding involves false statements to a tribunal or misappropriation of a counterparty's property, the two features of the conduct alleged here. Compl. ¶ 72. Courts regularly decline to strike prior-fraud allegations like these. *See Dubai Equine,* 2019 WL 3811922, at *3 (denying motion to strike "Systemic Fraud" allegations because they could be admissible under Rule 404(b)(2) to prove intent or knowledge); *N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Tex.*, 71 F. Supp. 2d 108, 120–21 (E.D.N.Y. 1999) (declining to strike allegations of prior frauds because they were "potentially admissible in evidence").

Second, Section D matters even apart from Count II. It supports Yahoo's punitive damages claim, which rests on conduct evincing "a high degree of moral turpitude." Compl. ¶¶ 63, 78; *see N.Y. Islanders*, 71 F. Supp. 2d at 120–21 (declining to strike punitive damages claim at the pleading stage). Punitive damages exist not only to punish but "to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007). And whether the conduct at issue "was an isolated event or only the latest incident in a continuing pattern" of similar behavior is "an important factor" in deciding whether punitive damages are warranted. *Randi A.J. v. Long Island Surgi-Ctr.*, 46 A.D.3d 74, 85–86 (2d Dep't 2007). Section D alleges that pattern, and with it the need to deter Mr. Bibi and AdMedia from repeating it. Compl. ¶¶ 64–72. And even if that claim fell, the allegations would remain relevant to AdMedia's intent when it breached the Agreement. *Avnet, Inc. v. Am. Motorists Ins. Co.*, 684 F. Supp. 814, 817 (S.D.N.Y. 1988) (dismissing contract punitive damages request but refusing to strike allegations of the defendant's other contract disputes because they could bear on "defendant's intent when it breached this contract").

Third, Section D also bears on fees. Yahoo seeks fees under Section 1117(a). Compl. at 28 (Prayer for Relief ¶ H). Whether a case is exceptional turns on "the totality of the circumstances," including a party's motivation and the need for deterrence. *Octane Fitness*, 572 U.S. at 554 & n.6, 555 (holding that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award"); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018) (holding that *Octane Fitness* governs exceptional-case fees under the Lanham Act). A history of similar disputes is evidence of that bad faith. *See GTFM, Inc. v. Solid Clothing, Inc.*,

215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (holding that the defendant's involvement "in numerous infringement actions in the past confirms its bad faith").

Defendants' objections fail. Defendants do not cite the three-part standard set out above, let alone try to meet it. *See Dubai Equine*, 2019 WL 3811922, at *2. Their argument is less than a page long and cites only the Rule itself. Mot. at 15–16. They never address whether evidence of the prior proceedings would be admissible, and they identify no prejudice beyond alleged harm to AdMedia's reputation, which is baseless because the allegations refer to already public filings. *Id*. Any effort to supply that showing on reply would come too late. *See Penske*, 548 F. Supp. 3d at 381.

Defendants argue Section D is irrelevant to "confusion." Mot. at 15. But Yahoo brings no confusion claim. And the fact that some proceedings are pending, settled, or brought by AdMedia's adversaries goes to weight and admissibility at trial, not to the permissibility of the pleadings. *See Avnet*, 684 F. Supp. at 817 (denying motion to strike without prejudice because the court could not say "to a certainty" that no evidence of the other disputes would be admissible). A settlement resolves liability; it does not make the conduct alleged irrelevant to intent. And concern for reputation is not the kind of prejudice that justifies striking public-record proceedings. *Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 50–51 (S.D.N.Y. 2020) (denying motion to strike allegations the movant called "a blatant and shameful attempt to embarrass and prejudice" it, because the movant had not shown prejudice where the matter alleged was "already public," and holding that concerns about influencing a jury "are properly reserved for trial"); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 559 (S.D.N.Y. 2023) (finding no prejudice where movants asserted that "[t]he only possible

motivation for including the allegations appears to be to defame and embarrass" them). The allegations in Section D are relevant and material, and they should not be stricken.

## V. CONCLUSION

The Court should deny Defendants' motion in its entirety or, in the alternative, grant Yahoo leave to amend.

DATED: October 30, 2026

Respectfully Submitted,

BY: *\/s/ Evan S. Nadel*
EVAN S. NADEL
KILPATRICK TOWNSEND & STOCKTON LLP
3 Times Square
New York, NY 10036
Telephone: 212-775-8700
Facsimile: 212-775-8800
Email: enadel@ktslaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing MEMORANDUM OF LAW IN OPPOSITION TO AD.COM INTERACTIVE MEDIA, INC. AND DANNY BIBI'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) contains 8736 words and therefore complies with the word-count limitations of Local Civil Rule 7.1(c).

DATED: October 30, 2026

By: *_/s/ Evan S. Nadel_*
Evan S. Nadel